Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/20/2018 08:15 AM CDT

- 777 -

**Nebraska Supreme Court Advance Sheets
298 Nebraska Reports**
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

Facilities Cost Management Group, LLC, appellant, v.
Otoe County School District 66-0111, also known
as Nebraska City Public Schools, appellee.

___ N.W.2d ___

Filed January 26, 2018.    No. S-16-1193.

1. **Juries: Verdicts.** A jury, by its general verdict, pronounces upon all or any of the issues either in favor of the plaintiff or the defendant.
2. **Juries: Verdicts: Presumptions.** Because a general verdict does not specify the basis for an award, Nebraska law presumes that the winning party prevailed on all issues presented to the jury.
3. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.
4. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.
5. **Trial: Courts: Juries: Attorneys at Law: Notice: Appeal and Error.** In Nebraska, the failure of the court to notify counsel of a jury's question is reversible error only if prejudice results.
6. **Rules of Evidence: Juries.** Pursuant to Neb. Rev. Stat. § 27-606(2) (Reissue 2016), juror affidavits cannot be used for the purpose of showing a juror was confused, as that would relate directly to the juror's mental processes in rendering the verdict.
7. **Pretrial Procedure: Appeal and Error.** A trial court's ruling on a discovery sanction will not be disturbed on appeal absent an abuse of discretion.
8. **Pretrial Procedure.** The determination of an appropriate discovery sanction is to be considered in the factual context of the particular case.
9. **Rules of the Supreme Court: Pretrial Procedure: Expert Witnesses.** The Nebraska Court Rules of Discovery in Civil Cases allow a party to discover facts known and opinions held by opposing experts.

- 778 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

10. \_\_\_\_: \_\_\_\_: \_\_\_\_. A party may, through interrogatories, require the other party to identify each person intended to be called as an expert witness, disclose the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify.

11. \_\_\_\_: \_\_\_\_: \_\_\_\_. Generally, a party who has responded to a discovery request with a response that was complete when made is under no duty to supplement the response. However, a party has a duty to seasonably supplement its discovery response with respect to any question directly addressed to the identity of experts expected to be called at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.

12. **Pretrial Procedure: Expert Witnesses.** When determining what discovery sanction is appropriate, a trial court should consider the explanation for the failure to comply, the importance of the expert's testimony, the surprise to the opposing party, any time needed to prepare to meet the testimony from the expert, and the possibility of a continuance.

13. **Judgments: Verdicts: Directed Verdict.** A motion for judgment notwithstanding the verdict may be granted when the movant's previous motion for directed verdict, made at the conclusion of all the evidence, should have been sustained.

14. **Judgments: Verdicts.** To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.

15. \_\_\_\_: \_\_\_\_. On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.

16. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

John A. Svoboda and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellant.

Larry E. Welch, Jr., Damien J. Wright, and Larry E. Welch, Sr., of Welch Law Firm, P.C., for appellee.

- 779 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Stacy, J.

This case, which is before us for a second time, involves a dispute over amounts owed under a contract between Facilities Cost Management Group (FCMG) and Otoe County School District 66-0111, also known as Nebraska City Public Schools (the School District). In the first appeal, we found the jury had been given an erroneous instruction and we reversed a verdict in favor of FCMG and remanded the cause for a new trial.[1] On retrial, the jury returned a verdict in favor of the School District. FCMG appeals, assigning error to the admission and exclusion of certain evidence, to the jury instructions, and to the court's ruling on posttrial motions. Finding no reversible error, we affirm.

## I. FACTS

### 1. General Background

In 2008, FCMG entered into a contract with the School District to perform certain architectural, owner representative, and project management services related to a large construction project undertaken by the School District. The project spanned almost 5 years. During that time, a dispute arose over amounts due FCMG under the contract.

FCMG ultimately filed a breach of contract action against the School District. After a jury trial, FCMG was awarded approximately $1.9 million in damages. The School District appealed, and we reversed, and remanded for a new trial after finding the trial court had improperly instructed the jury that § 11.2 of the parties' contract was unambiguous.[2]

The case was then retried. The second jury trial generally focused on two issues. The first was how FCMG's fees were

---

[1] *Facilities Cost Mgmnt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015).

[2] *Id.*

- 780 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

to be calculated under the contractual provision we found was ambiguous, § 11.2, which provided in part:

> These fees and costs are intended to be converted to Lump Sum amounts with the initial approval by the Owner and Architect of the Project Scope, Budget, and concept to be advanced for funding. Lump Sum amounts and inclusions shall remain effective for the duration of the Project(s), except in the event of approved changes in the scope of work or alternatives to be bid adding two percent or more to the scope. In such event the Lump Sum fees and costs shall be increased proportionately to reflect the full percentage of changes.

The second issue was the School District's affirmative defenses. The School District asserted that FCMG fraudulently induced it into entering the contract by representing that the contract contained a guaranteed maximum price. In this regard, the School District claimed FCMG led it to believe that once the School District approved the initial scope and budget, FCMG would manage the project to that fixed budget, and that project costs would not change unless the School District approved scope changes or selected alternative construction options. The School District also alleged as an affirmative defense that FCMG misrepresented the fees it intended to charge and that the School District entered into the contract in reliance on that misrepresentation.

## 2. PRECONTRACT NEGOTIATIONS

In 2006, the School District decided to construct a new grade school and make significant renovations to its existing grade school and high school. Merle Rambo, the sole shareholder, director, and officer of FCMG, submitted a proposal for the project to the School District. The proposal emphasized that FCMG was not a traditional architectural firm, but instead would serve as the project's architect, owner's representative, and manager. It stated that because of this, FCMG had the "unique ability" to "offer guaranteed maximum cost options."

- 781 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

After Rambo presented his proposal, the School District submitted various questions to him. One question asked whether there was a "guaranteed maximum price for the project," and Rambo responded, "Yes," followed by an explanation. Another question asked what happened if the bids came in over the budget, and Rambo responded FCMG would match the bids to the budget. The School District also asked whether the fees FCMG showed in the proposal were "all inclusive," and Rambo responded the "costs are all inclusive, incorporating construction, equipment, site development and related project management expenses."

The School District decided to hire FCMG, and Rambo sent a standard form agreement for architectural services to Thomas Farrell, the School District's representative. The parties customized certain parts of the standard form agreement, including the fee agreement in § 11.2.

Rambo signed the customized contract on July 18, 2007. Farrell did not sign until August 9. During the interim, Farrell asked Rambo questions regarding § 5.2.2 of the contract, which stated that "[n]o fixed limit of Construction Cost shall be established as a condition of this Agreement . . . ." Farrell thought this was inconsistent with FCMG's responsibility, as outlined in its proposal, to perform as the owner's representative and project manager and to manage the project to a fixed budget. To address these concerns, the parties added § 12.7 to the contract. This section states that FCMG's earlier proposal was attached "for general reference purposes." Farrell testified that by doing this, he thought the parties were incorporating a guaranteed maximum price into the contract. He further testified that he would not have signed the contract if a guaranteed maximum price was not part of the deal.

Farrell also discussed fees with Rambo prior to signing the contract. Farrell was confused because there was a fee schedule in § 11.2, but other sections of the contract referenced "OR/PM" or "Owner Representative/Project Management" fees. According to Farrell, Rambo told him the final fees would be

- 782 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

approximately 11 percent of the project budget, plus reimbursables. Farrell testified that he would not have signed the contract had he known this was not the fee agreement.

At trial, Rambo acknowledged telling Farrell the fees would be 10 to 12 percent, but explained he thought Farrell was asking about only architectural fees, and not owner representative or project management fees. Rambo also explained that the fee rates in his proposal covered only architectural fees and did not cover owner representative or project manager fees.

### 3. Approval of Project Scope

In January 2008, Rambo prepared a project budget and presented it to the School District at a school board meeting. The budget was presented in the form of a grid, which showed the costs for the project broken down into categories such as site and construction, equipment, professional services, and connection systems. The parties generally agree that this was the point where FCMG's fees were to be converted into a "Lump Sum" pursuant to § 11.2 of the contract.

The January 2008 budget grid showed a project cost of $24.6 million. During Rambo's presentation, the School District asked him to identify the lump-sum fee in the grid. He indicated the fee was shown in the category titled "professional services" in the amount of $1,944,000. At trial, Rambo testified that this answer referred only to his architectural fees, as that is what he thought the School District was referencing. Rambo prepared a trial exhibit showing that in aggregate, the 2008 budget grid actually showed fees, in various categories, in the amount of $3,824,000. Trial testimony established, however, that at least some of these fees were not ascertainable by the School District at the time the budget grid was presented in January.

### 4. Additions to Project Scope

In August 2008, Rambo presented the School District a list of alternatives to consider for the construction projects. Each alternative was presented with a corresponding cost. The

- 783 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

School District understood the costs associated with the alternatives were "the cost that would be incurred to the overall Project"[3] if selected. The School District approved the alternatives with associated costs listed by Rambo of $1.4 million. The School District understood this should have increased the project budget from $24.6 million to $26 million.

In May 2009, FCMG emailed the School District a revised budget. This budget showed total project costs of $27.5 million. The School District asked why the budget was shown as $27.5 million, when it understood it was now $26 million. FCMG responded with a one-page memorandum attempting to explain several scope increases. The School District also asked Rambo to explain how his fees were being calculated, but he did not respond.

FCMG presented evidence that the School District approved and added over $4.8 million in scope changes to the projects. The School District presented evidence that it added only approximately $2.9 million in scope changes.

### 5. EXPERT TESTIMONY

#### (a) Robert Mabrey

Both parties presented expert testimony on how FCMG's fees should be calculated under the provisions of § 11.2 of the contract. Robert Mabrey, an architect who testified for the School District, explained how to calculate FCMG's "proportionate" adjustment of fees under § 11.2. Mabrey testified that the calculation required determining the proportionate relationship between fees and construction costs at the time the original lump sum was agreed upon, and then applying that percentage to determine FCMG's fees for increases in the scope of construction. As a hypothetical example, if the initial approved construction costs were $20 million, and the initial lump-sum fee was $2 million, then FCMG would be entitled to an additional fee of 10 percent of the cost of any approved scope increases or selected alternatives.

---

[3] Brief for appellee at 15.

- 784 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

Mabrey then looked to the January 2008 budget grid to determine the lump sum. He found it included construction costs of $ 19.9 million. Mabrey acknowledged the parties did not agree on what that budget grid included for FCMG's fees; FCMG argued the budget grid showed approximately $3.8 million in fees, while the School District contended it showed only $1.9 million in fees. Because of this dispute, Mabrey prepared two calculations of the proportional difference—one based on FCMG's fee numbers and the other based on the School District's fee numbers.

Using FCMG's assertion that the budget grid included fees of $3.8 million, Mabrey concluded that was 19.23 percent of the construction cost of $19.9 million. He then applied this percentage to the additional construction costs incurred during the course of the project, which he calculated at $2.9 million. This computation resulted in Mabrey's finding that FCMG would be entitled to an additional fee of $562,302. In sum, FCMG's fees would be the $3.8 million plus $562,302, for a total of approximately $4.3 million. It was undisputed that FCMG previously had been paid $3,661,127 in fees, so according to Mabrey, the amount due using that computation would be $725,195.

Mabrey also did the computation using the School District's assertion that the budget grid lump-sum fee amount was $1.9 million, not $3.8 million. Under that scenario, the percentage of fees to construction costs was 12.65, and applying that percentage to the $2.9 million in scope changes resulted in increased fees of $369,974. This computation resulted in Mabrey's finding that FCMG was entitled to total fees of approximately $2.8 million. Because FCMG already had been paid an amount in excess of $2.8 million, no fees remained due under this scenario.

### (b) Robert Kirchner

Robert Kirchner testified as an expert for FCMG. Kirchner is a forensic accountant with a background in banking, accounting, and finance. Before trial, the School District moved in

- 785 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

limine to limit Kirchner's testimony to how FCMG calculated its fees, arguing that he was not qualified by either his education, training, or experience to offer any opinion about the meaning or interpretation of the contract provisions at issue, or whether the fees charged by FCMG were consistent with the terms of the contract. The district court overruled the motion in limine.

At trial, Kirchner testified he had reviewed the invoices FCMG sent to the School District and he explained how FCMG's fees were actually calculated in those invoices. However, the district court sustained the School District's objections to Kirchner's testimony on how FCMG's fees should be calculated under the terms of the contract or whether FCMG's method was consistent with the contract. The court generally reasoned that Kirchner was not qualified as an expert to give such opinions.

### (c) Michael Purdy

Michael Purdy is an architect who provided services on the project for FCMG. Before the first trial, he was disclosed as an expert witness for FCMG. The disclosure stated Purdy would offer opinions "about any and all aspects of the project, including, but not limited to the scope of the project and changes thereto and to the fees charged."

At the first trial, Purdy testified about scope changes to the project, but did not offer an opinion about how fees were to be calculated under the contract. When the cause was remanded for retrial, FCMG did not supplement the expert disclosure for Purdy or otherwise indicate his testimony at the second trial would differ from that offered previously.

At the second trial, Purdy again testified about scope changes to the project. In addition, FCMG attempted to elicit opinion testimony from Purdy regarding how the contract should be interpreted in calculating fees due to FCMG. The School District objected to these questions, and the trial court sustained the objections, finding such testimony was outside the scope of the expert disclosure.

- 786 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

6. Jury Instructions

The jury was instructed that § 11.2 of the contract was ambiguous as to the phrase "'scope of work'" and that the jury must determine "which of two or more meanings represents the true intentions of the parties. It is for you to determine the intent of the parties from all the facts and circumstances." The jury was further instructed:

B. Burden of Proof

Before [FCMG] can recover against the [School District] on its claim for breach of contract, FCMG must prove, by the greater weight of the evidence, each and all of the following:

1. The terms of the written contract, including the meaning of Section 11.2;

2. That [FCMG] substantially performed its part of the contract;

3. That [the School District] breached the contract by failing to pay fees for services provided by FCMG pursuant to the contract;

4. That the breach of contract was a proximate cause of some damage to FCMG; and

5. The nature and extent of that damage.

C. Effect of Findings

If [FCMG] has not met this burden of proof, then your verdict must be for the [School District].

On the other hand, if [FCMG] has met its burden of proof, then you must consider the [School District's] affirmative defenses that [FCMG] fraudulently induced the [School District] to enter into the contract and/or materially misrepresented the full scope of services it would provide and/or the amount of fees it would charge pursuant to the contract and the manner in which said fees would be calculated.

The jury was given two verdict forms. Verdict form No. 1 provided: "We, the jury, find[s] that [FCMG] is entitled to damages from the [School District] on its breach

- 787 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

of contract claim and awards to [FCMG] damages in the amount of $ _____.” Verdict form No. 2 provided: “We, the jury, finds in favor of the [School District] and against [FCMG].”

After deliberations began, the jury submitted the following question to the court concerning FCMG’s burden of proof on the breach of contract claim:

> Regarding Section B of Instruction 2 if the required 10/12 majority of jurors do not find [FCMG] met [its] burden of proof, must 10/12 then agree [FCMG] has not met the burden of proof to rule for the [School District]?
>
> In other words, do 10 jurors have to agree that the burden of proof was not met by FCMG to rule in favor of [the School District], or do we rule for the [School District] since 10/12 jurors cannot say FCMG has met [its] burden?

The court, without notifying counsel, replied: “You must refer to and follow the jury instructions.”

Later, the jury submitted a second question to the court: “If at least 10 of our jury members cannot find in favor of [FCMG’s] burden of proof being met, shall we rule for the [School District]?” The Court replied: “You have deliberated for more than six hours; therefore ten or eleven of you can reach a verdict.” Before beginning deliberation, the jury had been instructed: “A verdict reached during the first six hours of your deliberation must be agreed to by all of you, that is, it must be unanimous. After six hours of deliberation, you may reach a verdict agreed to by ten or eleven of you.” The jury subsequently returned verdict form No. 2, signed by 10 jurors, finding in favor of the School District.

### 7. POSTTRIAL MOTIONS

FCMG timely moved for judgment notwithstanding the verdict or alternatively for a new trial. Both motions were denied, and FCMG timely filed this appeal.

- 788 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

## II. ASSIGNMENTS OF ERROR

FCMG assigns, restated, renumbered, and consolidated, that the trial court erred in (1) allowing the School District to put on evidence of a material misrepresentation and a fraudulent misrepresentation and instructing the jury on these defenses; (2) failing to instruct jurors that they could award FCMG damages, even if the School District prevailed on an affirmative defense; (3) improperly responding to jury questions without contacting counsel; (4) excluding Purdy's testimony about the fee calculation; (5) preventing Kirchner from testifying about the meaning of the contract; (6) excluding evidence of prejudgment interest; and (7) denying the posttrial motions.

## III. ANALYSIS

[1,2] Much of our analysis in this case is shaped by the general verdict the jury returned in favor of the School District. A jury, by its general verdict, pronounces upon all or any of the issues either in favor of the plaintiff or the defendant.[4] Because a general verdict does not specify the basis for an award, Nebraska law presumes that the winning party prevailed on all issues presented to the jury.[5]

Applying the general verdict rule here, we presume the jury found in the School District's favor on all issues submitted, including whether the contract was breached and how § 11.2 of the contract was to be interpreted. Within this framework, we examine FCMG's assignments of error.

### 1. Affirmative Defenses

[3,4] FCMG assigns that the trial court erred in allowing the School District to put on evidence of its affirmative defenses and erred in instructing the jury on the School District's

---

[4] *Heckman v. Burlington Northern Santa Fe Ry. Co.*, 286 Neb. 453, 837 N.W.2d 532 (2013); *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

[5] *Id.* See, also, *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

- 789 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

affirmative defenses. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[6] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[7]

Here, the jury was instructed to consider the School District's affirmative defenses only if it found FCMG had met its burden of proof on the breach of contract claim. Under the general verdict rule, we presume the jury determined the breach of contract issue in favor of the School District. Thus, the jury never reached the question of the School District's affirmative defenses, and any alleged error in admitting evidence or instructing the jury on those affirmative defenses would necessarily be harmless.[8] FCMG's assignments relating to the School District's affirmative defenses cannot form the basis for reversible error.

## 2. Questions From Jury

The jury submitted two questions to the court during deliberations. The court responded to both questions without contacting counsel. FCMG argues this procedure did not comply with Neb. Rev. Stat. § 25-1116 (Reissue 2016), which provides:

> After the jury [members] have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information

---

[6] *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015); *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

[7] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012); *Karel v. Nebraska Health Sys.*, 274 Neb. 175, 738 N.W.2d 831 (2007).

[8] See *Scheele v. Rains*, 292 Neb. 974, 874 N.W.2d 867 (2016).

- 790 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel.

[5] FCMG is correct that the procedure utilized by the court did not comply with § 25-1116. However, in Nebraska, the failure of the court to notify counsel of a jury's question is reversible error only if prejudice results.[9] FCMG contends the jury's questions illustrate it was confused about whether damages could be awarded to FCMG if the jury found the School District had proved "one or both of its"[10] affirmative defenses. FCMG does not explain, however, why this is so or how answering the jury's questions in a different manner or contacting counsel prior to answering, would have made any difference.

Nothing about the court's failure to notify counsel of the jury's questions can reasonably be interpreted to result in prejudice to FCMG. Again, because the general verdict rule applies, we presume the jury found that FCMG failed to prove the School District breached the contract. FCMG's argument that the court's answers confused the jury is premised on the presumption that the jury found a breach and, thus, is directly contrary to the general verdict rule. A similar factual situation was present in *State v. Owen*,[11] and there, the Nebraska Court of Appeals held no prejudice resulted when the trial court referred the jury back to the instructions without notifying counsel of the jury question. Likewise here, the court effectively referred the jury back to its instructions in response to both questions. On this record, we do not find prejudicial error in the trial court's responses to the questions asked by the jury.

---

[9] *In re Estate of Corbett*, 211 Neb. 335, 318 N.W.2d 720 (1982). See *Brodersen v. Traders Ins. Co.*, 246 Neb. 688, 523 N.W.2d 24 (1994).

[10] Brief for appellant at 27.

[11] *State v. Owen*, 7 Neb. App. 153, 580 N.W.2d 566 (1998).

- 791 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

### 3. Juror Affidavits

When it moved for a new trial, FCMG submitted the affidavits of two jurors, one of whom signed the verdict returned by the jury and one of whom did not. The affidavits generally reflected the affiants' belief that the jury's two questions were poorly phrased by the foreperson and that the jury instructions were confusing regarding the effect of the affirmative defenses. The affidavits did not state that any extraneous information was considered by the jurors or that any outside influence affected the jury. Over objection, the court received the juror affidavits, but overruled the motion for new trial.

In its brief on appeal, FCMG relies on the juror affidavits to support its argument that the jury was confused by the instructions. The specific argument presented is that the jury did not think it could award any damages to FCMG if it found for the School District on one or both of the affirmative defenses.

Again, such an argument is premised on the jury's finding the School District breached the contract and then going on to consider its affirmative defenses. This factual scenario is simply not supported by the record before us. Moreover, according to Neb. Rev. Stat. § 27-606(2) (Reissue 2016):

> Upon any inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

[6] Pursuant to § 27-606(2), juror affidavits cannot be used for the purpose of showing a juror was confused, as that would

- 792 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

relate directly to the juror's mental processes in rendering the verdict.[12] We find no error in denying FCMG's motion for new trial.

### 4. EXCLUSION OF EXPERT TESTIMONY

FCMG argues it was error to limit the trial testimony of two of its experts. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[13]

### (a) Purdy

Purdy testified as an expert for FCMG at the first trial and again at the second trial. Before the first trial, the School District served interrogatories on FCMG asking, among other things, that FCMG identify each expert witness it intended to call, the subject matter on which the expert would testify, and the "substance of the facts and opinions" to which each witness was expected to testify. On July 1, 2013, FCMG answered the interrogatory and identified Purdy as an expert expected to testify "about any and all aspects of the project, including, but not limited to the scope of the project and changes thereto and to the fees charged."

Purdy was deposed by the School District before the first trial. Purdy did not, either in his deposition or at trial, offer an opinion regarding the interpretation of § 11.2 or how fees should be calculated under the contract. After § 11.2 was found on appeal to be ambiguous and the cause was remanded for retrial, the School District designated Mabrey as its expert who would testify about how fees should be calculated under the contract. FCMG disclosed that Kirchner would be its expert on that issue. FCMG did not supplement its prior expert disclosure as to Purdy.

Purdy was called to testify at the second trial, and FCMG attempted to elicit his opinion on how § 11.2 of the contract

---

[12] See *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[13] *In re Estate of Clinger, supra* note 6; *Arens v. NEBCO, Inc., supra* note 6.

- 793 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

should be interpreted and how it related to calculation of fees. The School District objected to this testimony, arguing it was outside the scope of the opinions FCMG had disclosed for Purdy and resulted in unfair surprise. The trial court sustained the School District's objection and did not allow Purdy to testify about his opinion on that issue. FCMG argues this was an excessive discovery sanction, and suggests the exclusion of this evidence amounted to prejudicial error and warrants a new trial.

[7,8] A trial court's ruling on a discovery sanction will not be disturbed on appeal absent an abuse of discretion.[14] The determination of the appropriate sanction is to be considered in the factual context of the particular case.[15]

[9-11] The Nebraska Court Rules of Discovery in Civil Cases allow a party to discover facts known and opinions held by opposing experts.[16] A party may, through interrogatories, require the other party to identify each person intended to be called as an expert witness, disclose the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify.[17] Generally, a party who has responded to a discovery request with a response that was complete when made is under no duty to supplement the response.[18] However, a party has a duty to seasonably supplement its discovery response with respect to any question directly addressed to the identity of experts expected to be called at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.[19]

---

[14] See *Booth v. Blueberry Hill Restaurants*, 245 Neb. 490, 513 N.W.2d 867 (1994).

[15] *Id.*

[16] Neb. Ct. R. Disc. § 6-326(b)(4).

[17] § 6-326(b)(4)(A)(i).

[18] § 6-326(e).

[19] § 6-326(e)(1)(B).

- 794 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

Neb. Ct. R. Disc. § 6-337 allows a party to apply for an order compelling discovery and allows a trial court to impose discovery sanctions if a party has failed to comply with a court order to provide or permit discovery. And in *Norquay v. Union Pacific Railroad*,[20] we held that a trial court may appropriately exclude all or part of an expert's testimony at trial as a sanction for noncompliance with the discovery rules requiring supplementation. *Norquay* observed that when it comes to the expected testimony of an expert:

"[I]f a party changes his plans about the expert witnesses he will use at trial or if there is a change in the subject matter on which an expert will testify or the substance of his testimony a supplemental response must be made. This is necessary to carry out the provisions of Rule [§ 6-326(b)(4)] with regard to expert witnesses. With the expert witnesses, as with the persons having knowledge of discoverable facts, any change in plan would routinely come to the attention of the lawyers for the party and the burden of supplementation is very small."[21]

[12] *Norquay* instructs that the appropriate sanction for failing to supplement expert discovery responses should be determined by trial courts based on the factual context of each case, and should be reviewed by appellate courts for an abuse of discretion. When determining what sanction is appropriate, a trial court should consider the explanation for the failure to comply, the importance of the expert's testimony, the surprise to the opposing party, any time needed to prepare to meet the testimony from the expert, and the possibility of a continuance.[22]

---

[20] *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

[21] *Id*. at 538, 407 N.W.2d at 154 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049 (1970)).

[22] *Norquay v. Union Pacific Railroad, supra* note 20. See, also, *Brown v. Hansen*, 1 Neb. App. 962, 510 N.W.2d 473 (1993).

- 795 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

FCMG argues its February 2013 disclosure did not require supplementation, because it broadly stated Purdy would testify about "'the fees charged.'"[23] FCMG also argues that *Norquay* and § 6-337 only apply when a party completely fails to respond to a discovery request regarding an expert. Finally, FCMG generally argues that exclusion of evidence is a particularly harsh sanction and suggests that the court here should have imposed a lesser sanction.

On this record, we find no abuse of discretion in the trial court's exclusion of Purdy's testimony regarding the proper interpretation of § 11.2. FCMG's February 2013 discovery responses, while broadly referencing fees, said nothing about Purdy's offering an opinion on the interpretation of the contract provisions generally or § 11.2 in particular. After FCMG served its discovery responses, the School District took Purdy's deposition and he did not offer an opinion regarding the interpretation of § 11.2; nor was such an opinion elicited from Purdy during the first trial. If FCMG wished to expand the scope of Purdy's expert testimony in the second trial to include opinions regarding the proper interpretation of § 11.2, it should have supplemented its interrogatory answer accordingly.

For the sake of completeness, we expressly reject FCMG's suggestion that *Norquay* and § 6-337 only allow a court to exclude expert testimony if there has been a complete failure to disclose anticipated opinions. Although that was the factual circumstance presented in *Norquay*, we also have applied the *Norquay* rule to limit an expert's trial testimony when a party who has failed to supplement prior discovery responses seeks to offer an undisclosed opinion at trial.[24] The trial court here had discretion to consider a variety of sanctions, and under the circumstances presented, we find no abuse of discretion in

---

[23] Brief for appellant at 13.

[24] See, e.g., *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001).

excluding Purdy's opinion testimony on the proper interpretation of the contract.

### (b) Kirchner

At trial, Kirchner testified about how FCMG actually calculated its fees, based on his review of the invoices it submitted to the School District. However, the court sustained the School District's objections to questions seeking to elicit Kirchner's opinion on whether the method used by FCMG to calculate its fees was legally consistent with the contractual language. The court generally reasoned that Kirchner, as a forensic accountant, was not qualified to give an expert opinion on the legal interpretation of the contract. FCMG contends this was an abuse of discretion. We disagree.

FCMG relies on *Maiz v. Virani*[25] for the proposition that Kirchner was qualified to give an expert opinion as to how the contract should be interpreted. In that case, a forensic accounting expert testified about the damages incurred by the plaintiffs in a complicated financial case. In doing so, the accounting expert apparently referenced specific provisions of the parties' contracts when explaining assumptions he made in arriving at his opinions. On appeal, the defendants alleged his testimony was improper, because he was not qualified to testify as to the meaning of the parties' ambiguous contract. The 11th Circuit effectively held that the accounting expert did not actually render opinions on the meaning of the contracts, but instead only referenced contractual provisions as the basis for his calculations. As such, the opinion in *Maiz* actually supports the trial court's finding that Kirchner was not qualified to give an expert opinion on how the contract should be interpreted—it does not support FCMG's argument.

We find no abuse of discretion in the trial court's decision to preclude Kirchner from offering an opinion on whether the method actually used by FCMG to calculate fees was consistent with the contractual language.

---

[25] *Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001).

- 797 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

### 5. PREJUDGMENT INTEREST

FCMG moved for partial summary judgment seeking a determination that it was entitled to prejudgment interest as a matter of law. The court denied the motion for partial summary judgment and expressly held that FCMG was not entitled to prejudgment interest. At trial, FCMG made an offer of proof that, if permitted, it had a witness who was prepared to testify that prejudgment interest was owed and who would have calculated the amount due.

On appeal, FCMG alleges the trial court erred in refusing to allow evidence of prejudgment interest. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[26]

Again, because the jury returned a general verdict in favor of the School District, we presume the jury found FCMG failed to prove breach of contract. So, on this record, the trial court could not have committed prejudicial error by refusing to allow FCMG to produce evidence of prejudgment interest on damages allegedly owed.

### 6. POSTTRIAL MOTIONS
### PROPERLY DENIED

FCMG contends the damages awarded at trial were clearly inadequate and the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for new trial. We find no error in denying either motion.

### (a) JNOV

FCMG moved for a directed verdict at the close of all evidence, and the district court denied the motion. After the jury returned a verdict in favor of the School District, FCMG moved for JNOV, which the district court denied.

[13-15] A motion for JNOV may be granted when the movant's previous motion for directed verdict, made at the

---

[26] *In re Estate of Clinger, supra* note 6; *Arens v. NEBCO, Inc., supra* note 6.

- 798 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

conclusion of all the evidence, should have been sustained.[27] To sustain a motion for JNOV, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.[28] On a motion for JNOV, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.[29]

Here, FCMG's motion for JNOV was premised on its claim that the verdict for the School District was the result of confusing jury instructions. Because a motion for JNOV asks the trial court to revisit whether the movant's prior motion for directed verdict should have been granted as a matter of law, it is improper to rely upon allegedly confusing jury instructions as the basis for a JNOV motion. We have previously addressed, and rejected, FCMG's assignment that the jury instructions were erroneous, and that issue fares no better reframed as one in support of JNOV.

### (b) New Trial

[16] FCMG moved alternatively for a new trial, asserting the jury's award of damages was inadequate, not sustained by the evidence, and contrary to law. The district court denied the motion. An appellate court reviews a denial of a motion for new trial for an abuse of discretion.[30]

In its brief, FCMG describes the jury's verdict as an "award of *zero* damages"[31] and argues the award was inadequate

---

[27] *Frank v. Lockwood*, 275 Neb. 735, 749 N.W.2d 443 (2008).

[28] *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015); *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012).

[29] *Frank v. Lockwood, supra* note 27.

[30] See, *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017); *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

[31] Brief for appellant at 21.

- 799 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
FACILITIES COST MGMT. GROUP v. OTOE CTY. SCH. DIST.
Cite as 298 Neb. 777

because "the evidence at trial indisputably showed that FCMG was entitled to be paid for additional work on the project."[32] Its argument is premised on the theory that the jury found in FCMG's favor on the breach of contract claim, but awarded no damages because it also found for the School District on one or more of its affirmative defenses. But the record does not support that premise.

The jury returned a general verdict for the School District, and thus an appellate court must presume the jury found in favor of the School District on all issues, including the breach of contract claim. Furthermore, contrary to FCMG's assertion that the evidence was "indisputable,"[33] Mabrey specifically testified that under the School District's calculations, FCMG had already been paid more than what was due. The trial court did not abuse its discretion in failing to grant the motion for new trial.

## IV. CONCLUSION

We find no merit to FCMG's assignments of error, and we affirm the judgment of the district court.

AFFIRMED.

WRIGHT and KELCH, JJ., not participating.

---

[32] *Id.*

[33] *Id.* at 17.